UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

LORRAINE ROSE,

                Plaintiff,

v.

JAMES A. HORAN and FLUSHING ASPHALT, LLC,

                Defendants.

**MEMORANDUM & ORDER**
17-CV-6408 (MKB)

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Lorraine Rose commenced the above-captioned action on October 27, 2017 in the New York State Supreme Court, Queens County. (Notice of Removal ¶ 1, Docket Entry No. 1.) Plaintiff brings this action derivatively on behalf of Defendant Flushing Asphalt, LLC ("Flushing Asphalt") against its managing member Defendant James A. Horan, alleging breaches of contract, fiduciary duty, and New York Limited Liability Company Law §§ 409, 411 ("NYLLCL"), seeking equitable relief and damages. (*See generally* Compl., annexed to Notice of Removal as Ex. A, Docket Entry No. 1-1.) Plaintiff also brings direct claims against Defendant Horan alleging breach of the fiduciary duty of good faith and fair dealing, and seeking equitable relief and damages. (*Id*. ¶¶ 44–49.) On November 3, 2017, Horan removed the action to the Eastern District of New York. (Notice of Removal.) Plaintiff moves to remand the action to state court. (Pl. Mot. to Remand ("Pl. Mot."), Docket Entry No. 7; Pl. Mem. in Supp. of Mot. to Remand ("Pl. Mem."), Docket Entry No. 7-1.) Horan opposes the motion. (Def. Mem. in Opp'n to Mot. ("Def. Opp'n"), Docket Entry No. 15.)

      For the reasons set forth below, the Court finds that removal is inappropriate and

therefore grants Plaintiff's motion to remand the action to state court. The Clerk of Court is directed to remand the action to the New York Supreme Court, Queens County.

## I. Background

Plaintiff is a member of Defendant Flushing Asphalt, a limited liability company organized under the laws of the State of New York. (Pl. Mem. 1.) Defendant Horan and Viane Lizza, who is not a party, are also members of the Flushing Asphalt. (*Id*.) Horan is the managing member of Flushing Asphalt with a fifty percent membership interest. (Pl. Mem. 4.) Plaintiff and Lizza each hold a twenty-five percent membership interest in Flushing Asphalt. (Pl. Mem. 4.) Plaintiff is a citizen of New York and both Horan and Lizza citizens of New Jersey.[1] (Pl. Mem. 4; Def. Opp'n 1.)

Flushing Asphalt was created on January 7, 2008, with the primary purpose to "manufacture, sell, and distribute asphalt and asphalt related products." (Pl. Mem. 4–5; Def. Opp'n. 17.) On that day, Flushing Asphalt entered into a Land, Asphalt, Plant and Equipment Lease with College Point Associates ("College Point") to lease the property located at 120-01 31st Avenue, Flushing, NY (the "Property") until January of 2017 (the "Lease").[2] (Pl. Mem. 1–2.) The Property is Flushing Asphalt's principal place of business and its only operating facility. (Pl. Mem. 5.) The Lease contained a provision permitting Horan, in his personal capacity, to purchase the Property only if and when the "leased Property has not been sold by the end of the

---

[1] The parties do not dispute any of these individual's citizenship for purposes of diversity jurisdiction.

[2] At the time of this transaction, Plaintiff and her brother owned a twenty-five and seventy-five percent membership interest respectively in College Point, with the remaining percentage shared among other employees of the business, including Horan. (Decl. of James A. Horan in Supp. of Def. Opp'n ("Horan Decl.") ¶ 25, Docket Entry No. 15-1.)

ninth year of said Lease," (the "Lease Option"). (*Id*. at 1.) Horan was not a party to the Lease in his personal capacity but signed the lease on behalf of Flushing Asphalt. (*Id*. at 2, 4.) According to Plaintiff, Horan failed to submit the lease to the other two disinterested members of Flushing Asphalt for approval. (*Id*. at 2.) All three members of Flushing Asphalt signed "other documents" on the same day that Horan signed the Lease, including the Flushing Asphalt, LLC Operating Agreement (the "Operating Agreement").[3] (*Id*.)

Several years later, after the death of her brother in June of 2011, Plaintiff became the managing member of College Point. (Compl. ¶ 15.) According to Horan, in 2012, the three members of Flushing Asphalt entered into negotiations concerning the Lease Option, resulting in amendments to the Operating Agreement and an exchange of releases. (Decl. of James A. Horan in Supp. of Def. Opp'n ("Horan Decl.") ¶¶ 59–66, Docket Entry No. 15-1.) On May 18, 2012, Plaintiff and Lizza signed a release (the "Release") expressly barring them from asserting a broad range of claims against Horan or Flushing Asphalt which may have accrued prior to the date of the Release. (Def. Opp'n 21–22; *see also* May 18, 2012 Release ("Release"), annexed to Decl. of James A. Horan as Ex. E, Docket Entry No. 15-6.) Neither party has provided the Court with any release signed by Horan nor described the contents of the purported release.

In January of 2017, Horan sought to exercise the Lease Option. (Pl. Mem. 2.) College Point objected and on February 6, 2017, Horan filed an action to enforce the Lease Option in the

---

[3] Plaintiff does not identify which other documents the members of Flushing Asphalt signed on January 7, 2008. Horan contends that three documents form the basis of Flushing Asphalt: the Operating Agreement, the Lease, and an agreement that Flushing Asphalt would purchase equipment from College Point. (Decl. of James A. Horan in Supp. of Def. Opp'n ("Horan Decl.") ¶ 37, Docket Entry No. 15-1.)

3

United States District Court for the District of New Jersey.[4] (Pl. Mem. 2; Compl. ¶ 25; Horan Decl. ¶ 69.) In October of 2017, Plaintiff initiated this action in the New York Supreme Court, Queens County, alleging that Horan's exercise of the Lease Option constituted a usurpation of a corporate opportunity belonging to Flushing Asphalt, and therefore a breach of fiduciary duty to Flushing Asphalt. (Pl. Mem. 1.)

On November 3, 2017, Horan filed a Notice of Removal of the Action to this Court. (Notice of Removal.) Horan asserts that the Court has subject matter jurisdiction under 28 U.S.C. § 1332.[5] (Def. Opp'n 3.) Plaintiff seeks to remand the action to the New York Supreme Court, Queens County claiming that complete diversity of citizenship does not exist. Plaintiff also seeks costs and fees. (Pl. Mem. 1.)

## II. Discussion

### a. Standard of review

A defendant may remove a civil action brought in state court to a federal court in "any civil action . . . of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Federal courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different States." 28 U.S.C. § 1332(a). "[I]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability."

---

[4] As of the filing of Plaintiff's motion, the New Jersey action remained pending. (Pl. Mem. 2.)

[5] In the Notice of Removal, Horan incorrectly cites 28 U.S.C. § 1331 (federal question jurisdiction) as the basis of his claim of diversity jurisdiction. (Notice of Removal.)

*Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (quoting *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)).  The party seeking removal bears the burden of proving that the jurisdictional and procedural requirements have been met.  *Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) ("Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper."); *see Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000); *Bankhead v. New York*, No. 13-CV-3377, 2013 WL 6145776, at *1 (E.D.N.Y. Nov. 21, 2013) ("An effective petition for the removal of a state action to federal court must allege a proper basis for the removal under sections 1441 through 1445 of Title 28." (quoting *Negron v. New York*, No. 02-CV-1688, 2002 WL 1268001, at *1 (E.D.N.Y. Apr. 1, 2002))).

Where subject matter jurisdiction is contested in the context of removal, a court may consider materials outside the pleadings, including affidavits.  *See B.N. ex rel. Novick v. Bnei Levi, Inc.,* No. 12-CV-5057, 2013 WL 168698, at *3 (E.D.N.Y. Jan. 15, 2013) (collecting cases); s*ee also JS Barkats PLLC v. Blue Sphere Corp.*, No. 16-CV-8404, 2017 WL 2930935, at *3 (S.D.N.Y. July 10, 2017) ("Where, as here, 'subject matter jurisdiction is contested, courts are permitted to look to materials outside the pleadings,' including 'documents appended to a notice of removal or a motion to remand that convey information essential to the court's jurisdictional analysis.'" (quoting *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010))).

### b. The Court does not have subject matter jurisdiction over the action

The parties appear to agree that the Court does not have diversity jurisdiction over this

case if Plaintiff properly joined Flushing Asphalt as a Defendant.[6] (*See* Pl. Mem.; Def. Opp'n 3–4.) Horan argues, however, that the Court should disregard Flushing Asphalt's citizenship for diversity purposes because Flushing Asphalt is a "nominal defendant" and is "fraudulently joined" because the derivative claims brought on its behalf are (1) barred by the applicable statutes of limitations and (2) prohibited pursuant to the Release signed by Plaintiff. (Def. Opp'n 2–5, 8–24.) Plaintiff argues that Flushing Asphalt is a proper party because her derivative claims are neither time-barred nor governed by the Release. (*See* Pl. Reply 9, 16.)

Federal courts have subject matter jurisdiction over state law claims when the plaintiff and defendant are of diverse citizenship and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a); *see also Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 48 (2d Cir. 2012). For a federal court to exercise subject matter jurisdiction based on diversity, there must be complete diversity of citizenship between all plaintiffs and all defendants. *Bartlett v. Honeywell Int'l Inc.*, --- F. App'x ---, ---, 2018 WL 2383534, at *2 (2d Cir. May 25, 2018) ("Diversity jurisdiction is present when there is complete diversity between the parties . . . ." (citing 28 U.S.C. § 1332(a))); *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117–18 (2d Cir. 2014) ("Subject matter jurisdiction is based on 28 U.S.C. § 1332, which requires 'complete diversity,' *i.e.* all plaintiffs must be citizens of states diverse from those of all defendants.").

The citizenship of a limited liability company ("LLC") is determined by looking to the citizenship of each of its members. *Bayerische Landesbank*, 692 F.3d at 49.

---

[6] Horan asserts, and Plaintiff does not contest, that the amount in controversy exceeds $75,000. (Def. Opp'n 3.)

### i. Flushing Asphalt is not a nominal defendant

In derivative actions commenced on behalf of an LLC, the LLC is not a nominal party but instead a necessary party under Rule 19 of the Federal Rules of Civil Procedure. *Atanasio v. O'Neill*, 235 F. Supp. 3d 422, 425 (E.D.N.Y. 2017); *see also Cook v. Toidze*, 950 F. Supp. 2d 386, 390 (D. Conn. 2013) (noting that, in "a derivative suit, the limited liability company is not a nominal party"); *Bartfield v. Murphy*, 578 F. Supp. 2d 638, 650 (S.D.N.Y. 2008) (concluding that an LLC was a necessary party to "derivative claims raised on its behalf"). Therefore, as a necessary party, the court must take into account the LLC's citizenship for purposes of determining the presence of diversity jurisdiction. *Atanasio*, 235 F. Supp. 3d at 425 ("In a derivative suit, more importantly, it is the rule that the LLC's citizenship should be taken into account for purposes of determining the presence of diversity jurisdiction."); *Bischoff v. Boar's Head Provisions Co., Inc.,* 436 F. Supp. 2d 626 (S.D.N.Y. 2006) (holding "as long as [plaintiff] may bring derivative claims on behalf of [defendant LLC], then [defendant LLC] is a true defendant that destroys complete diversity in this case.").

Because Plaintiff brings derivative claims on behalf of Flushing Asphalt, it is a necessary party pursuant to Rule 19 of the Federal Rules of Civil Procedure. *See Atanasio*, 235 F. Supp. 3d at 425 (finding LLC to be a necessary party where plaintiff brought derivative claims on its behalf). As an LLC, Flushing Asphalt takes the citizenship of each of its members and is both a citizen of New Jersey (by virtue of Lizza and Horan's citizenship), and New York (by virtue of Plaintiff's citizenship). *See Bayerische Landesbank*, 692 F.3d at 49 ("Defendant . . . is a limited liability company that takes the citizenship of each of its members."). As a result, there is no complete diversity because both Plaintiff and Flushing Asphalt are citizens of New York. (*See* Def. Opp'n 1.)

### ii. Plaintiff did not fraudulently join Flushing Asphalt

Horan concedes that Flushing Asphalt would be a necessary party to the action "if [Plaintiff] were asserting viable derivative claims," but argues that Plaintiff's claims against Flushing Asphalt have no possibility of success in state court because they are time-barred and because Plaintiff signed the Release, expressly barring her from asserting claims for breaches of fiduciary duty such as those presented here. (Def. Opp'n 4, 8–24.)

Plaintiff argues that she appropriately joined Flushing Asphalt and that the Court should not conduct a merits analysis of the claims prior to determining whether the Court has subject matter jurisdiction.[7] (Pl. Reply 6–7.)

The doctrine of fraudulent joinder prohibits a plaintiff from defeating diversity jurisdiction by improperly joining a non-diverse defendant "with no real connection to the controversy." *Bounds v. Pine Belt Mental Health Care Res.*, 593 F.3d 209, 215 (2d Cir. 2010). However, "'this jurisdictional inquiry is preliminary to any decision on the merits,' and is not meant to serve as a back door for getting a defendant's dispositive motions heard in a preferred federal forum." *Saveria JFK, Inc. v. Flughafen Wien, AG*, No. 15-CV-6195, 2016 WL 11263673, at *4 (E.D.N.Y. May 3, 2016) (quoting *Intershoe, Inc. v. Filanto S.P.A.*, 97 F. Supp.

---

[7] Plaintiff argues that the Court may not consider a statute of limitations defense prior to determining whether it has subject matter jurisdiction. (Pl. Reply 14.) However, the Court may consider a statute of limitations defense in considering allegations of fraudulent joinder. *See Hunter v. Philip Morris USA*, 582 F.3d 1039, 1045 (9th Cir. 2009) (holding that "the statute of limitations defense is a permissible means by which to establish fraudulent joinder in order to remove an action on diversity grounds" (quotation omitted)); *Brown v. Jevic*, 575 F.3d 322, 327 (3d Cir. 2009) (holding that "[w]e, along with our sister circuits, have recognized that a statute of limitations defense is properly considered in connection with a fraudulent joinder inquiry" (citations omitted)); *City of Syracuse v. Loomis Armored US, LLC*, No. 11-CV-00744, 2011 WL 6318370, at *6 (N.D.N.Y. Dec. 15, 2011) ("Although Plaintiff appears to argue otherwise, the case law makes clear that a court may consider a statute of limitations defense in determining whether a defendant has been fraudulently joined in order to destroy complete diversity." (citations omitted)).

2d 471, 474 (S.D.N.Y. 2000)), *report and recommendation adopted*, No. 15-CV-6195, 2017 WL 1194656 (E.D.N.Y. Mar. 30, 2017); *see also Battaglia v. Shore Parkway Owner LLC*, 249 F. Supp. 3d 668, 673 (E.D.N.Y. 2017) (declining to conduct a fraudulent joinder analysis requiring an adjudication on the merits of the case); *Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F. Supp. 2d 177, 182 (S.D.N.Y. 2003) (finding a "defendant may not use removal proceedings as an occasion to adjudicate the substantive issues of a case." (quoting 14B Wright, Miller & Cooper, *Federal Practice & Procedure* § 3721 at 331 (3d ed. 1998))). The party alleging fraudulent joinder "bears the heavy burden of proving this circumstance by clear and convincing evidence, with all factual and legal ambiguities resolved in favor of plaintiff." *Briarpatch v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004) (citing *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)). To succeed, the party alleging fraudulent joinder must prove "either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia*, 138 F.3d at 461; *see also Bounds,* 593 F.3d at 215; *Briarpatch Ltd., L.P.*, 373 F.3d at 302; *Bnei Levi, Inc.*, 2013 WL 168698, at *2. Where there is no allegation of "outright fraud," the party alleging fraudulent joinder must show that recovery is *per se* precluded under state law. *See Battaglia v. Shore Parkway Owner LLC*, 249 F. Supp. 3d 668 (E.D.N.Y. 2017) (internal citations omitted); *City of Syracuse v. Loomis Armored U.S., LLC*, No. 11-CV-00744, 2011 WL 6318370, at *5 (N.D.N.Y. Dec. 15, 2011); *MBIA Ins. Corp. v. Royal Bank of Canada,* 706 F. Supp. 2d 380, 393–94 (S.D.N.Y. 2009) ("[T]he test of whether or not there has been fraudulent joinder is uniformly whether the plaintiff can establish a claim under state, not federal law." (internal citations omitted)).

### 1. Plaintiff's derivative claims are not all *per se* precluded by the statute of limitations

Horan does not assert that Plaintiff committed "outright fraud" to defeat jurisdiction and the Court finds none. Instead, Horan argues that that all of Plaintiff's derivative claims are time-barred under New York law and therefore there is "no possibility" that Plaintiff could prevail in state court, precluding recovery. (Def. Opp'n 5, 8.) Because only one of Plaintiff's derivative claims need have a possibility of success, the Court considers Plaintiff's derivative cause of action seeking a declaration that "were the Option to be exercised by Horan," he would be unjustly enriched. (Compl. ¶¶ 40-41.) Plaintiff contends that the derivative cause of action for unjust enrichment relates to the exercise of the Lease Option. (*Id*. ¶¶ 18–23, 33–35.) Plaintiff argues that this claim did not accrue until Horan attempted to exercise the Lease Option in January of 2017, (Pl. Mem. 15), while Horan argues that the claim accrued on January 7, 2008, the date that he signed the Lease with the Lease Option, (Def. Opp'n 9).

Declaratory judgement actions in New York are governed by the six-year "catch-all" statute of limitations in CPLR section 213(1), or any shorter period where the claim could have been made in another proceeding for which a specific limitation period is provided. *Save The View Now v. Brooklyn Bridge Park Corp.*, 68 N.Y.S.3d 478, 481 (N.Y. App. Div. 2017) (citing *Solnick v. Whalen*, 49 N.Y.2d 224, 229-230 (1980); and then citing *Town of Hempstead v. AJM Capital II, LLC*, 13 N.Y.S.3d 199, 201 (N.Y. App. Div. 2015)). "A cause of action accrues, for the purposes of measuring the period of limitations, 'when all of the facts necessary to the cause of action have occurred so that the party would be entitled to obtain relief in court.'" *Town of Poughkeepsie v. Espie*, 840 N.Y.S.2d 600, 603 (2d Dep't 2007) (quoting *Matter of Motor Veh. Acc. Indem. Corp. v. Aetna Cas. & Sur. Co.*, 625 N.Y.S.2d 584, 587 (1996)); *see also Pac. Health Advantage v. Cap Gemini Ernst & Young*, No. 07-CV-3725, 2007 WL 2619052, at *3

(S.D.N.Y. Sept. 5, 2007) (citing *Town of Poughkeepsie*, 840 N.Y.S.2d at 603); *Spitzer v. Schussel*, 792 N.Y.S.2d 798, 802 (Sup. Ct. 2005) (finding a cause of action accrues under New York law "when all of the facts necessary to the cause of action have occurred so that the party would be entitled to obtain relief in court." (citation omitted)). Unjust enrichment claims accrue when a defendant accepts the benefits bestowed upon him, or upon occurrence of the wrongful act giving rise to the duty of restitution. *L.I. Head Start Child Dev. Servs., Inc.*, 558 F. Supp. 2d at 409 (first citing *Freeman v. Bianco,* No. 02-CV-7525, 2003 WL 179777 at *4 (S.D.N.Y. Jan. 24, 2003); and then citing *Plitman v. Leibowitz,* 990 F. Supp. 336, 337 (S.D.N.Y. 1998)).

The parties agree that Plaintiff's derivative claims seeking declaratory relief, including her fourth derivative cause of action, are subject to the six-year statute of limitations in CPLR section 213(1). (Pl. Reply 16; Def. Opp'n 8–9.) As to the date of accrual, Horan may have accepted the "benefit bestowed upon him" on the date that he executed the Lease including the Lease Option within it. *See L.I. Head Start Child Dev. Servs.*, 558 F. Supp. 2d at 409. However, the allegedly "wrongful act" identified by Plaintiff in the Complaint as to this claim is Horan's *exercise* of the Lease Option, which, if successful, would result in his ownership of the Property.[8] (Compl. ¶¶ 38–39.) Because this enrichment can only occur once Horan exercises the Lease Option, this is the "wrongful act giving rise to the duty of restitution." *See Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 264 (S.D.N.Y. 2008) (finding unjust enrichment claim accrued on date defendants took business profits belonging to plaintiff, not

---

[8] Although the Lease Option may have independent value (which may be the subject of a separate unjust enrichment claim), Plaintiff does not claim that Horan has been unjustly enriched by his ownership of the Lease Option alone. *See Onanuga v. Pfizer, Inc.*, 369 F. Supp. 2d 491, 500 (S.D.N.Y. 2005) (finding the statute of limitations began to run for unjust enrichment claim on date that defendant received the value of the option once exercised).

when defendants took prior, predicate steps to deprive plaintiff of his interest in the business); *Golden Pac. Bancorp v. Fed. Deposit Ins. Co.,* 273 F.3d 509, 520 (2d Cir. 2001) (finding unjust enrichment claim accrued on date defendant paid itself interest, not on earlier dates when the wrongful interest accrued).

Resolving all factual and legal ambiguities in favor of Plaintiff, *see Briarpatch*, 373 F.3d at 302, the Court finds that Plaintiff's fourth derivative cause of action accrued in January of 2017 when Horan attempted to exercise the Lease Option. Plaintiff filed the Complaint on October 27, 2017, well within the six-year statute of limitations period. (*See* Compl.) Thus, Plaintiff's fourth cause of action is timely. Having found that at least one of Plaintiff's derivative claims is timely, the Court declines to assess the timeliness of the remainder of her claims.[9]

### 2. The Release does not *per se* preclude Plaintiff's derivative claims

Horan argues, alternatively, that Plaintiff's derivative claims have "no possibility" of success under New York law because Plaintiff signed the Release, expressly barring Plaintiff from asserting claims that had accrued before the date of the Release. (Def. Opp'n 21–22; *see also* Release.)

Plaintiff contends that the Court should disregard the Release,[10] which was executed

---

[9] While based on the nature of the claims, Plaintiff's remaining derivative claims appear time-barred, the Court need not address whether these claims are timely or whether, as Plaintiff argues, the claims are entitled to tolling.

[10] Plaintiff argues that the Court is limited to the four corners of the Complaint in determining subject matter jurisdiction. (Pl. Reply 6–7.) As discussed above, the Court may also consider the parties' pleadings and affidavits where, as here, subject matter jurisdiction is contested. *See B.N. ex rel. Novick v. Bnei Levi, Inc.,* No. 12-CV-5057, 2013 WL 168698, at *3

under "murky circumstances," because Flushing Asphalt is not a party to the Release and is not bound by its terms. (Pl. Reply 9.)

According to Horan, Plaintiff and Lizza signed the Release after negotiations between the three members of Flushing Asphalt concerning the Lease Option. (Horan Decl. ¶¶ 59–66.) The agreement releases Horan and Flushing Asphalt from all claims arising prior to the date of the Release.[11] It states in relevant part:

> LORRAINE ROSE and VIANE LIZZA . . . hereby release and discharge JAMES A. HORAN, and his heirs, personal representatives, successors and assigns, and FLUSHING ASPHALT, LLC, and its members, JAMES A. HORAN, LORRAINE ROSE and VIANE LIZZA, and its directors, officers, and personal representatives, successors, and assigns (collectively "RELEASEE") from all . . . claims and demands whatsoever (collectively, "Claims"), in law or in equity, which the RELEASORS, and any of RELEASORS' heirs, personal representatives, successors and assigns ever had, now have or hereafter can, shall or may have against the RELEASEE for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this RELEASE, whether known or unknown, relating to Flushing Asphalt, LLC (the "LLC") and/or the Operating Agreement of the LLC . . . .

(Release 1)

In *Ridinger*, the New York Appellate Division recently rejected the same defense with regard to a similar release finding such an agreement does not bar any derivative claim that the plaintiff may bring on behalf of an LLC against that defendant. *See Ridinger v. W. Chelsea Dev. Partners LLC*, 56 N.Y.S.3d 48, 49 (App. Div. 2017) ("Because the derivative claims were not barred by a release, but were merely brought in breach of a covenant not to sue, plaintiff did not

---

(E.D.N.Y. Jan. 15, 2013) (collecting cases); *see also JS Barkats PLLC v. Blue Sphere Corp.*, No. 16-CV-8404, 2017 WL 2930935, at *3 (S.D.N.Y. July 10, 2017).

[11] Horan states that he exchanged releases with Plaintiff and Lizza, (Horan Decl. ¶¶ 59–66), but neither party provides any release signed by Horan.

lack standing at the time of the original action and thus an amendment would relate back.").
Similarly, despite the broad language of the Release, "[P]laintiff could not and did not release the derivative claims on behalf of the [members]" of Flushing Asphalt. *Id*. (citing *Carper v. Nussbaum*, 825 N.Y.S.2d 55 (App. Div. 2006)). The Release does not prohibit claims brought on behalf of Flushing Asphalt, rather, it was executed for Flushing Asphalt's *benefit*. Resolving all factual and legal ambiguities in favor of Plaintiff, *see Briarpatch*, 373 F.3d at 302, the Court finds that the Release does not *per se* preclude Plaintiff's derivative claims brought on behalf of Flushing Asphalt.

Therefore, Horan has failed to satisfy the "heavy burden" of proving by clear and convincing evidence that there is no possibility that Plaintiff can state a derivative cause of action on behalf of Flushing Asphalt in state court. *Id*. Accordingly, because Flushing Asphalt was not fraudulently joined, the parties are not completely diverse and the Court lacks subject matter jurisdiction under 28 U.S.C. § 1332(a).

### c. Fees and costs

Plaintiff seeks fees and costs in connection with the motion because "Horan has failed to articulate an 'objectively reasonable basis' for his Notice of Removal." (Pl. Reply 20.)

"[C]ourts may award attorney's fees under section § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The Court finds that Horan had an objectively reasonable basis for removing the action in light of his belief that Plaintiff had fraudulently joined Flushing Asphalt as a Defendant.

14

## III. Conclusion

For the reasons discussed above, the Court grants Plaintiff's motion to remand the action, and remands the action to the Supreme Court of the State of New York, Queens County. The Clerk of Court is directed to send a certified copy of this Order to the Clerk of the New York Supreme Court, Queens County, and to close this case.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: September 10, 2018
      Brooklyn, New York